**SACRAMENTO BASEBALL ASSOCIA-TION, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 8013.**

United States District Court
N. D. California, N. D.
May 3, 1961.

Joseph C. Lavelle, Sacramento, Cal., for plaintiff.

Richard L. Carico, Asst. U. S. Atty., San Francisco, Cal., for defendant.

HALBERT, District Judge.

Plaintiff has instituted this action seeking a refund of admissions taxes allegedly paid in error. The case has been submitted to this Court for its decision upon a set of stipulated facts.

The Facts

Plaintiff was, at all times pertinent to this action, a California corporation, engaged in the operation of a professional

baseball team in the City of Sacramento, California, under the franchise of the Pacific Coast League. During the 1957 and 1958 baseball seasons, plaintiff sold reserved seat season tickets[1] for $30 each. These tickets allowed the holder to use a designated reserved seat for each of the 71 regularly scheduled games played in Sacramento during the season. These tickets did not entitle the holder to gain admittance to the park. Admittance to the park could be obtained only by the purchase of a general admission ticket for $1.25, by way of a pass, or by way of a reduced admission ticket. According to plaintiff's brief, the principal reduced admission tickets were for ladies on Ladies' Day or for children (The price of these tickets was 50 cents each.). This fact is not now before the Court, but if it should have proven relevant, the Court would, under the circumstances of this case, have afforded plaintiff an opportunity to establish its truth. The purchaser of a season ticket was entitled to have a placard with his name placed on the designated seat and to have daily identification tickets printed for such seat. Of the total sum of $30 paid for the ticket, plaintiff allocated the sum of $6 as the charge for the advertising. The purchaser did not, however, have a choice of paying $24 for the seat without the advertising. He had to pay $30, or he got no ticket. The ticket carried the statement: "Federal taxes included when applicable."

During the 1957 and 1958 seasons, plaintiff accounted for the money from the tickets as follows:

Upon sale of a ticket, the $30 purchase price was credited to an account called Box Seat Deposits and Advertising. During the seasons, a count was made of the number of adults occupying such seats on ordinary days, or of male adults occupying such seats on Ladies' Days. For each such seat so occupied, Box Seat Deposits and Advertising was debited 5 cents and Admissions Tax Payable credit-ed 5 cents. The accumulated credits on Admissions Tax Payable were paid to the Government for each quarter.

The Government assessed a deficiency against plaintiff on the basis that of the $30 paid for each ticket, $27.27 was the price of admission and $2.73 was the Federal admissions tax. This resulted in a deficiency and accrued interest of $5,-991.56 by April 9, 1959, when plaintiff paid that sum under protest. Plaintiff filed a timely claim for refund, which was denied. The asserted grounds for the refund claim were that "The basis for collecting these taxes was not predicated upon payment for admission." No purchaser of a seat has received a refund from plaintiff, or consented to plaintiff's obtaining a refund.

### The Statutory Law

The statutes applicable to the time periods in which this dispute arose read, in pertinent part, as follows:

*Title 26 U.S.C. § 4231*

"There is hereby imposed:

"(1) General.—A tax of 1 cent for each 10 cents or major fraction thereof of the amount paid for admission to any place, including admission by season ticket or subscription. No tax shall be imposed under this paragraph on the amount paid for admission—

"(A) if the amount paid for admission is 90 cents or less, or

"(B) in the case of a season ticket or subscription, if the amount which would be charged to the holder or subscriber for a single admission is 90 cents or less.

"The tax imposed under this paragraph shall be paid by the person paying for such admission."

*Title 26 U.S.C. § 4232*

"(a) Admission.—The term 'admission' as used in this chapter includes seats and tables, reserved or otherwise, and other similar accom-

---

**1.** Plaintiff sold 1,414 tickets in 1957, and 793⅓ in 1958. Who bought ⅓ of a seat is not disclosed by the stipulated facts.

modations, and the charges made therefor."

### Title 26 U.S.C. § 7501

"(a) General rule.—Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose."

### Title 26 U.S.C. § 6415

"(a) Allowance of credits or refunds.—Credit or refund of any overpayment of tax imposed by section 4231(1) * * * may be allowed to the person who collected the tax and paid it to the Secretary or his delegate if such person establishes, under such regulations as the Secretary or his delegate may prescribe, that he has repaid the amount of such tax to the person from whom he collected it, or obtains the consent of such person to the allowance of such credit or refund."

### Application of the Law to the Facts

■ The claim of plaintiff is that Federal admission taxes have been erroneously collected in excessive amounts. These taxes have been paid by the persons who paid for the reserved seats (§ 4231(1), supra; and see the legend on the tickets: "Federal taxes included where applicable"). Since it is clear that no purchaser has received a refund from plaintiff, or has consented to plaintiff's being allowed a refund, plaintiff may not recover any refund of such allegedly erroneous tax (§ 6415(a), supra).

If plaintiff were the proper person to obtain a refund, the result would, however, be the same, for no less than two reasons. First, the claim for refund is defective for the purpose of stating plaintiff's major argument. Second, the tax was properly assessed by the Government.

■ "Admission" includes a reserved seat. These payments were, then, for admission. Plaintiff now contends that they constituted, under certain circumstances, payment for admission of the amount of less than 90 cents. This is still a payment for admission, and therefore such an argument is outside the scope of a claim for refund on the ground that the basis of collection was not payment for admission. Such a contention may not be presented to this Court for the first time (Rogan v. Ferry, 9 Cir., 154 F.2d 974).

■ The refund claim might suffice to cover plaintiff's argument that $6 of the cost of a ticket was for advertising.[2] But this argument is not solidly based upon the facts. Some of the patrons may have considered that the advertising value of the placards was worth having, and was worth as much as $6, or even $30 or more. Some of them undoubtedly were only interested in getting in to see the games. None of them had any choice. They either paid $30 for the combined benefits or paid nothing and got neither benefit. It seems apparent to the Court that the placards and daily tickets were useful for the purposes of insuring that the purchaser of the season ticket could readily find his seat, and for helping the management to keep interlopers out of the seat, as well as for advertising purposes. The primary purpose of the sale of tickets was to sell admissions to the seats. It would open an easy path of evasion to allow part of the cost to be credited arbitrarily to a fringe benefit such as was here involved. Under such a theory, there would be nothing to keep plaintiff from selling $30

2. The refund claim contains no factual allegations worthy of the name. At least the conclusionary allegations therein do

apply to the contention that $6 was for advertising.

worth of advertising in the placards, and throwing in the reserved seats for nothing. The situation would be different if there were a fixed charge for the season tickets for admission, with the placards available to those who wanted them at an extra charge. Since $30 was the minimum to be paid by those desiring admission, it follows that $30 is the amount upon which the tax must be figured.[3] It is patent that the Government has correctly concluded that $2.73 was the "Federal tax included where applicable."

Assuming *arguendo* that the refund claim is not legally defective, even then it is clear that plaintiff cannot prevail upon the merits of the case it seeks to establish.

In the instance of a season ticket, a tax is imposed if the amount which would be charged to the holder for a single admission is more than 90 cents (§ 4231 (1)). This amount is not set forth in the stipulations, hence plaintiff has failed to prove its case. According to plaintiff's memorandum prior to trial, the amount so charged would be 50 cents plus $1.25 for a general admission for an adult, except that ladies on Ladies' Day paid 50 cents for admission, and children invariably paid 50 cents. Such being the situation, it is evident that the total amount which would be charged to the holder for a single admission (if he or she paid for admission) would invariably be at least $1.[4] An individual who could obtain a pass into the park could, of course, secure a reserved seat for only 50 cents. If an individual could show that he could regularly count on securing a pass into the park during the entire season, he might be entitled to buy a ticket without paying admission tax. In that case, plaintiff should have sold him a ticket for $27.27, and maintained a record of the transaction. To the ordinary individual, $27.27 was the price of the ticket, and $2.73 was the tax. There is no legal basis upon which plaintiff would be authorized to collect an extra $2.73 from an individual not subject to the tax. At best, such a collection would appear to be the collection of a tax in error. If any such individual should exist, he, not the plaintiff, would have the right to claim the refund, upon making a proper showing.

■ Counsel have made the mistake of spreading the $30 paid for the season ticket over some number (either 60 or 71) of games played, in an effort to figure the prorata cost of a single performance. They have disagreed as to how this should be done. However such a prorata cost is computed, it is irrelevant, since the plain language of § 4231(1) (B), supra, makes no provision for the exemption from tax of a season ticket, even if the amount of the season ticket, spread over the number of games in the season, should result in a charge of less than 90 cents for each game. The exemption from the tax cannot be fixed on the basis of a prorated charge made for the admission for each game. The tax must be collected in every instance where the charge for a single admission, paid as a single transaction, exceeds 90 cents (§ 4231(1) (B), supra).

It is, therefore, ordered that plaintiff take nothing by this suit;

It is further ordered that judgment be entered in this suit in favor of defendant;

And it is further ordered that defendant prepare all documents necessary for the complete disposition of this case in accordance with the provisions of this Memorandum and Order, and lodge such documents with the Clerk of this Court pursuant to the applicable rules and statutes.

---

3. See 26 CFR (1949) § 101.2(g), made applicable to this case by TD 6091, 19 Fed.Reg. 5167 (August 17, 1954), paragraphs 1–3.

4. See 26 CFR (1949) § 101.4(d), made applicable to this case by TD 6091, supra.